HARRY C. SALVAGGIO, Plaintiff-Appellee v. NEW BREED TRANSFER CORP.,
Defendant-Appellant

No. COA01-1057

(Filed 18 June 2002)

### 1. Contracts— employment—payment of bonus—ambiguous language

The trial court did not err in a breach of employment agreement case by concluding as a matter of law that the language of the agreement pertaining to payment of a bonus was ambiguous, because: (1) the pertinent section of the agreement is uncertain as to the parties' agreement concerning whether plaintiff would be entitled to a $12,000 bonus if he elected to terminate his employment after working only one year; and (2) there was sufficient evidence before the trial court to support its finding that the parties intended that, at the end of one year of employment, plaintiff would have a vested right to a bonus of $12,000.

### 2. Interest— prejudgment—award from date of judgment versus date of breach

The trial court erred in a breach of employment agreement case by determining that plaintiff employee was entitled to payment of prejudgment interest under N.C.G.S. § 24-5(a) from the date of the judgment rather than from the date of defendant's breach because even though the trial court concluded that defendant had a good faith basis for disputing the plaintiff's claim, there is no appellate interpretation which holds that N.C.G.S. § 24-5(a) has a good faith exception.

Appeal by defendant and cross-appeal by plaintiff from judgment entered 26 March 2001 by Judge A. Moses Massey in Guilford County Superior Court. Heard in the Court of Appeals 15 May 2002.

*Elliot, Pishko, Gelbin & Morgan, P.A., by David C. Pishko, for plaintiff-appellee.*

*Kilpatrick Stockton LLP, by Leon E. Porter, Jr. and Elliot A. Fus, for defendant-appellant.*

WALKER, Judge.

Plaintiff initiated this action on 17 May 1999 alleging defendant had breached the compensation provision of an employment agree-

ment negotiated between the parties. The pertinent facts are not in dispute. Defendant is a New Jersey corporation engaged in the "acquisition, movement and transfer of materials and finished products." On 6 January 1997, plaintiff began working as a Project Controller for defendant's Greensboro affiliate. On that day, the parties executed an "Employment, Confidentiality and Non-Compete Agreement" (the Agreement). Section 2 of the Agreement stated in relevant part:

> **COMPENSATION**: In consideration of the services rendered hereunder, [defendant] agrees to pay to [plaintiff] an annual salary of $68,000.00 per annum, less deductions. Also. . .[plaintiff] will accrue a bonus of $12,000.00, less deductions, at the end of the first full year of employment. An additional $12,000.00 bonus, less deductions, will accrue at the end of the second year of employment. The full $24,000.00 bonus, less deductions, will be payable upon the completion of the second year of employment.

In March 1998, plaintiff voluntarily terminated his employment with defendant. Thereafter, he sent a letter to defendant requesting payment of a $12,000.00 bonus which defendant refused.

The trial court concluded that the language in Section 2 pertaining to the payment of a bonus is ambiguous. Thereafter, based on the stipulations and evidence presented at trial, the trial court found that the parties had intended plaintiff "would have a vested right to receive a bonus of $12,000.00, and that this bonus would be payable two years from the date of hiring." It then concluded defendant had breached the agreement and therefore plaintiff should recover $12,000.00 minus deductions. However, the trial court also concluded defendant had a "good faith basis" for disputing plaintiff's claim and ordered defendant only to pay plaintiff $12,000.00 minus deductions "together with interest at the legal rate from the date of this Judgment until paid . . . ."

I.

[1] With its appeal, defendant maintains the trial court erred, as a matter of law, in concluding the language of Section 2 is ambiguous. Rather, it contends the language "plainly and unambiguously" conditions plaintiff's receipt of bonus compensation upon his completing two years of employment.

The principal objective in the interpretation of a contract's provisions is to ascertain the intent of the parties. *Holshouser v. Shaner*

*Hotel Grp. Props. One,* 134 N.C. App. 391, 397, 518 S.E. 2d 17, 23 (1999), *aff'd per curiam,* 351 N.C. 330, 524 S.E.2d 568 (2000). Where the language of a contract is "clear and only one reasonable interpretation exists, the courts must enforce the contract as written . . . ." *Woods v. Nationwide Mut. Ins. Co.,* 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). However, if a contract contains language which is ambiguous, a factual question exists, which must be resolved by the trier of fact. *Crider v. Jones Island Club, Inc.,* 147 N.C. App. 262, 266-67, 554 S.E.2d 863, 866 (2001).

"The trial court's determination of whether the language of a contract is ambiguous is a question of law [and an appellate court's] review of that determination is *de novo*." *Bicket v. McLean Securities, Inc.,* 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996), *disc. rev. denied,* 346 N.C. 275, 487 S.E.2d 538 (1997) (citations omitted). An ambiguity exists where the "language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank,* 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). Stated differently, a contract is ambiguous when the "writing leaves it uncertain as to what the agreement was . . . ." *Barrett Kays & Assoc. v. Colonial Building Co.,* 129 N.C. App. 525, 528, 500 S.E.2d 108, 111 (1998) (*quoting International Paper Co. v. Corporex Constructors, Inc.,* 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989)). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.,* 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988); *see also Glover,* 109 N.C. App. at 456, 428 S.E.2d at 209.

Here, Section 2 provides that plaintiff "will *accrue* a bonus of $12,000.00, less deductions" at the end of his first full year of employment. It also provides that the full bonus "will be payable upon the completion of the second year of employment." The ordinary meaning of "accrue" is "[t]o come into existence as a claim that is legally enforceable." *The American Heritage College Dictionary* 9 (3d ed. 1997). Plaintiff maintains the parties use of the word "accrue" demonstrates their intention that he would be entitled to a $12,000.00 bonus upon the completion of his first year of employment. Nonetheless, he concedes that he would not receive the bonus until two years after his start date. In contrast, defendant argues the language in Section 2 demonstrates the parties' intention that plaintiff would only be entitled to a bonus if he completed the full two years of employment. To

accept either of the parties' interpretations would require us to alter the expressed language of Section 2. Thus, we conclude Section 2 is uncertain as to the parties' agreement concerning whether plaintiff would be entitled to a $12,000.00 bonus if he elected to terminate his employment after working only one year. As such, we agree with the trial court's conclusion that the language of Section 2 is ambiguous.

Additionally, the record supports the trial court's finding that the parties intended that plaintiff would be entitled to a $12,000.00 bonus, even if he voluntarily terminated his employment during his second year. Plaintiff testified that during employment negotiations, he informed defendant of his desire for an annual compensation of $80,000.00. Defendant replied that, because of its financial condition, it could meet plaintiff's requirement only if his compensation were structured as an annual salary of $68,000.00 with a $12,000.00 bonus and the parties agreed to defer paying the bonus for two years. Further, defendant's Chief Executive Officer, Louis DeJoy (Mr. DeJoy), testified that he interpreted Section 2 to mean that plaintiff would only be entitled to a $24,000.00 bonus upon his completing two years of employment. However, Mr. DeJoy conceded that if defendant had terminated plaintiff after a full year of employment, plaintiff would have been entitled to receive a $12,000.00 bonus.

Thus, there was sufficient evidence before the trial court to support its finding that the parties intended that, at the end of one year of employment, plaintiff would have a vested right to a bonus of $12,000.00. *See Barnhardt v. City of Kannapolis*, 116 N.C. App. 215, 224-25, 447 S.E.2d 471, 477, *disc. rev. denied*, 338 N.C. 514, 452 S.E.2d 807 (1994) ("where the trial court sits without a jury, the court's findings of fact are conclusive if supported by competent evidence, even though other evidence might sustain contrary findings"). We affirm that portion of the trial court's order which awards plaintiff $12,000.00 minus deductions.

II.

[2] In his cross-appeal, plaintiff contends the trial court erred in its conclusion that he was entitled to interest from the date of the judgment rather than from the date of defendant's breach. Pursuant to N.C. Gen. Stat. § 24-5(a) "[i]n an action for breach of contract . . . the amount awarded on the contract bears interest from the date of breach." N.C. Gen. Stat. § 24-5(a) (2001). Although defendant agrees N.C. Gen. Stat. § 24-5(a) is applicable to this case, it maintains that,

because the trial court essentially "rewrote" Section 2 of the Agreement, a breach could not have occurred until the date the judgment was entered.

It is well established that a breach of contract occurs when a party fails to perform a contractual duty which has become absolute. *See Millis Construction Co. v. Fairfield Sapphire Valley, Inc.*, 86 N.C. App. 506, 510, 358 S.E.2d 566, 569 (1987). Here, the trial court concluded that "plaintiff was entitled to receive a bonus in the amount of $12,000.00, less deductions, on January 6, 1999." Hence, defendant breached the agreement when it failed to pay plaintiff the bonus as of that date. Nevertheless, the trial court also concluded that "defendant had a good faith basis for disputing the plaintiff's claim, and therefore the plaintiff is not entitled to the payment of pre-judgment interest on the amount of damages awarded . . . ." We are unaware of any appellate interpretation which holds that N.C. Gen. Stat. § 24-5(a) has a "good faith" exception. Indeed, the plain language of the statute indicates otherwise. Accordingly, we conclude the trial court erred in determining that plaintiff was not entitled to payment of pre-judgment interest as of 6 January 1999.

Affirmed in part and reversed in part.

Judges McCULLOUGH and BRYANT concur.